### HENRY L. POTTER v. ROBERT ROBINSON.

When a debtor, who has been remanded to prison upon the undertaking and agreement of a dissatisfied creditor, pursuant to the thirteenth section of the insolvent debtors' act, (*Rev.*, p. 500,) gives bond, and is released from custody under the same section, the creditor's obligation to pay the weekly stipend is thereby terminated.

On *certiorari*.

Argued at November Term, 1877, before Justices SCUDDER, DIXON and REED.

For the plaintiff, *Garret Berry*.

For the defendant, *J. Henry Stone*.

The opinion of the court was delivered by

DIXON, J. The defendant, being in custody on a *capias*, at the suit, *ex contractu*, of the plaintiff, made application to the Common Pleas of Union county for the benefit of the "insolvent laws." At the hearing thereunder, the plaintiff, not being satisfied, in accordance with the thirteenth section of the "insolvent debtors' act," (*Rev., p.* 500,) entered into the statutory undertaking, and agreed in writing to allow and pay $2 per week to and for the support of the defendant, whereupon the court remanded him to prison. Immediately on such remand, the defendant gave the bond authorized by the proviso of the same section, conditioned for his compliance with the insolvent laws, and was forthwith discharged from custody. The plaintiff did not thereafter pay the weekly sum stipulated, and for that cause the court, on the defendant's application, ordered him to be discharged. This order is brought before us by *certiorari*, and the question presented, discussed and to be decided is, whether the plaintiff was bound to pay the weekly stipend after the defendant's release from imprisonment.

The argument urged before us, in support of the view adopted by the court below, is mainly that the language of the statute requires the payment under all circumstances, and it is, therefore, not within the province of the courts to create an exception—*ita lex scripta est*—and the judiciary must simply declare, not make the law.

It should not, however, be forgotten that while this is clearly the duty of the courts, yet, in performing that duty, we must not confine our examination to the bare words of the statute; we are to look also at the reason of the enactment, and guard against an absurd conclusion, if a literal construction would lead thereto. The intent of the legislature, as ascertained by the court, constitutes the law, and the court will not conclude that that intent was unreasonable or absurd, if such a conclusion can be evaded.

The provision enabling the dissatisfied creditor to keep his debtor in confinement pending the subsequent proceedings,

notwithstanding the purpose of the court to release him, first appears in the act of March 18th, 1795, section six. *Elm. Dig.* 250. From that time until the act of February 24th, 1858, (*Pamph. L.*, *p.* 103,) the debtor was bound to remain in custody until his right to a final discharge was settled, provided the creditor complied with the terms of the statute. One of those terms was that the creditor should agree to pay and should pay such sum as the court might direct, not exceeding, at first, four shillings; then, (November 28th, 1822, *Elm. Dig.* 256,) $1; then, (April 16th, 1846, *Nix. Dig.* 410,) $2 per week, to and for the support of the debtor; to be paid to the debtor or jailor, originally, on the second day of each week; afterwards, (November 28th, 1822, *Elm. Dig.* 256,) in such sum and at such time as the creditor might choose, but not to be withheld for a space longer than a week at any one time. The purpose of this allowance is declared by the act itself to be " the support of the debtor," and the necessity for its prompt payment, or the immediate discharge of the debtor, is indicated in the language of Chief Justice Ewing in *State* v. *Stiles*, 7 *Halst.* 296, where he decides that notice of the application for discharge need not be given to the creditor, lest, pending the delay, the debtor may be starving or subsisting on the bounty of others, from the want of what the creditor has engaged to supply. This exigency, of starving or subsisting on the bounty of others, could not press upon the debtor, save while he was in confinement, and it is reasonable to presume that the provision which the law has made to meet it was not designed to extend beyond the same period. It was because of the debtor's inability to support himself while actually imprisoned, that the law required his creditor to support him, and the alternative for the creditor's failure so to do was the prompt discharge of the debtor, that he might avail himself of his own resources. This discharge was, under the original statute, to be a release, not only from physical restraint, but also from legal liability to further arrest—a final discharge; but it was the release from actual custody which exonerated the creditor from the duty of subsequent

payment, and the discharge of the debtor from legal liability accompanied that release only because the statute had no provision for separating them.

But the act of February 24th, 1858, made such provision, and distinguished between the release from bodily restraint and that from legal liability, enabling the debtor, on giving bond, to be at large pending the question of his final acquittance. This act, however, did not in terms declare whether freedom, so obtained, should terminate the creditor's obligation to pay, but provided that all subsequent proceedings should be had in like manner, " *as near as may be,*" as if the debtor were actually in prison, under the remand of the court. This phrase *as near as may be*, manifestly contemplates some variation from the prescribed course. The extent of such variation is not defined, and hence it is for the courts to give such effect to this new provision as, in reason, ought to flow from it. It should not be limited by the physical possibilities of the case, but should be made inclusive of whatever changes the spirit of the legislation requires. Under the guidance of the two rules of construction laid down by Vattel, (*Potter's Dwar. on Stat.* 128,) " Every interpretation that leads to an absurdity ought to be rejected ; " and "The reason of the law, that is, the motive which led to the making of it, is one of the most certain means of establishing the true sense," I think no doubt can exist that the legislature has not required a creditor to pay his debtor a weekly stipend, merely because the former undertakes to show the latter not entitled to the benefit of the insolvent laws ; and has enacted that such an allowance shall cease when the imprisonment, which gives rise to it, terminates.

In my judgment, therefore, the order discharging the defendant was erroneous, and should be reversed.